UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID KNIFFEN,

        Plaintiff(s),        CASE NUMBER: 04-70497
                                          HONORABLE VICTORIA A. ROBERTS

v.

MACOMB COUNTY, et al.,

        Defendant(s).
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on Defendants Joseph Guzdziol, Richard Margosian and David VanSingel's respective Motions for Summary Judgment. For the reasons stated, Defendant Guzdziol's motion is **DENIED** and Defendants Margosian and VanSingel's motion is **GRANTED IN PART** and **DENIED IN PART**.

**II.    BACKGROUND**

This civil rights action is for injuries Plaintiff David Kniffen allegedly suffered during the execution of a search warrant at his home. Plaintiff sued Macomb County, the State of Michigan, the City of Mount Clemens, the City of Clinton Township, confidential informant David Greenlee and numerous officers from the Michigan State Police and the Macomb County Sheriff's Office.

Plaintiff alleges that the search warrant was obtained under false pretenses; that is, he contends that the alleged controlled drug buy between him and Greenlee never

1

occurred and that the officers made misrepresentations to obtain the search warrant before the alleged buy occurred.  Plaintiff also alleges that the officer Defendants failed to knock and announce before using a battering ram to force entry into his home.  And, he claims that excessive force was used against him during the execution of the warrant.  Specifically, while he was face down and handcuffed, Plaintiff claims that officers repeatedly stepped on and/or kicked him, and that officer Joseph Guzdziol pressed his face into the floor with enough force to cause carpet burns.

Although Plaintiff was suspected of selling the drug ecstacy, the search team only found twenty-two phenobarbital tablets, a small amount of marijuana and paraphernalia (which belonged to his roommate) and a taser gun.  Plaintiff was charged with multiple drug counts and with possession of the taser.  A jury acquitted Plaintiff of the drug charges, and the state court granted a judgment of acquittal on the taser charge.  While the prosecutor's appeal of the taser ruling to the Michigan Court of Appeals was successful, the prosecutor subsequently dismissed the charge.

In a prior Order, the Court dismissed Plaintiff's claims against the State of Michigan and the municipalities.  *See* Opinion and Order Granting, in Part, and Denying, in Part, Defendants' Motions to Dismiss and for Summary Judgment, November 24, 2004.  The Court also dismissed the claims against all but seven of the officer Defendants: Guzdziol, Margosian, VanSingel, John Becker, James Stachowski, Mark Berger and Mark Bratton.  *Id*.  Defendants Stachowski, Berger and Bratton were subsequently dismissed by stipulation.  Plaintiff also conceded, in part, the claim of First Amendment retaliation against Defendant Guzdziol.  The remaining claims are Plaintiff's claim that Guzdziol retaliated against him by requesting additional charges, in violation

of the First Amendment, and Plaintiff's Fourth Amendment excessive force and knock and announce claims against Guzdziol, Becker, Margosian and VanSingel. Defendant Greenlee has never appeared in this action.

Defendant Guzdziol requests summary judgment on the excessive force claim. Defendants Margosian and VanSingel request summary judgment on the excessive force and knock and announce claims. Becker did not join either motion.

### III.    STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing

out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

### IV. APPLICABLE LAW AND ANALYSIS

Plaintiff's claims against the officers are brought under 42 U.S.C. §1983.[1] To state a cause of action under §1983, Plaintiff must show that he "possessed a right; that he . . . was deprived of that right; and that the deprivation was caused by the reckless or

---

[1] 42 U.S.C. §1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4

intentional conduct of a person acting under color of law." *Ahlers v Schebil,* 994 F. Supp. 856, 864 (E.D. Mich. 1998). Injuries caused by mere negligence do not constitute a "deprivation" of a constitutionally protected right. *Id* (quoting *Lewellen v The Metropolitan Government of Nashville*, 34 F.3d 345, 348-349 (6th Cir. 1994), *cert den,* 513 U.S. 1112 (1995)).

It is undisputed that the officer Defendants were acting under color of law, and that Plaintiff alleges that his Fourth Amendment rights were violated. However, Defendants deny that there was a constitutional violation. In any event, they contend that they are entitled to qualified immunity.

Where the defense of qualified immunity is raised, the better approach is to determine first whether a constitutional violation has been established:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry.
>
> * * *
>
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier v Katz*, 533 U.S. 194, 201 (2001)(internal citation omitted).

### A.     Excessive Force

Claims of excessive force by police officers must be analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v Connor,* 490 U.S. 386, 395 (1989). The trial court must determine "whether the officers' alleged actions are

5

'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id* at 397. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id* at 396. A plaintiff need not suffer serious or permanent injury to sustain a claim of excessive force. *Johnson v City of Ecorse*, 137 F.Supp.2d 886, 892 (E.D. Mich. 2001)(plaintiff's complaint of injury to his wrist from tight handcuffs sufficient). However, there must be more force than "than the mere technical battery that is inextricably a part of any arrest." *Id*.

Plaintiff asserts that each of the Defendants used excessive force against him during their execution of the search warrant.

      i.      **Guzdziol**

After the officers entered Plaintiff's home, he and his roommate, Alan Mettler, were ordered to the floor. Plaintiff says the officers were dressed in black and had their faces covered. In his brief, Plaintiff says that the officers did not immediately identify themselves as officers and that he did not see any police markings on their clothes. However, Plaintiff testified during his criminal trial that he does not remember whether the officers said "police," and he did not remember whether the officers' clothes had police markings. Pl. Exh. 15 at pp. 90-92.

While the warrant was being executed, Plaintiff was face down and handcuffed behind his back. The officers also put a coat over his and Mettler's head, ostensibly to protect the identities of undercover officers participating in the raid. Plaintiff says that he persisted in requesting that the officers show him a warrant and a badge. Per Plaintiff, Guzdziol responded by putting his badge right up to Plaintiff's face, and Guzdziol and

other unidentified officers periodically kicked him in the head and body. When Plaintiff testified at trial, however, he did not identify Guzdziol (or anyone else) as the one who kicked him. Pl. Exh. 15 at pp. 29-41.

Fifteen minutes after the search began, Plaintiff testified that he attempted to stand up to "see who all was there." Pl. Exh. 15 at p. 40. He says Guzdziol responded by pushing him back to the ground, putting a knee across his back and rubbing his face into the carpet. Plaintiff claims that he suffered visible rug burns on his face as a result.

Plaintiff contends that Guzdziol's actions were excessive under the circumstances. Guzdziol contends that the force used to combat what he describes as Plaintiff's "active resistance" was reasonable.

Plaintiff failed to demonstrate a question of fact with regard to his claim that Guzdziol kicked him and placed a badge "up to" his face. Plaintiff did not present any evidence to support his claim that Guzdziol kicked him. Plaintiff only identifies Guzdziol in his brief as one of the officers who kicked him. However, he does not attach an affidavit or other evidence to support the claim. And, during his trial, Plaintiff did not identify Guzdziol or anyone else. Plaintiff's bare assertions in his brief to the contrary are insufficient to create a question of fact.

Plaintiff also failed to demonstrate a question of fact with regard to Guzdziol's alleged placement of a badge up to Plaintiff's face. This alleged action cannot reasonably be considered an act of force.

It is a close question whether reasonable jurors could find that Guzdziol's alleged act of rubbing Plaintiff's face into the carpet was excessive. The question is whether Guzdziol's actions were more "than the mere technical battery that is inextricably a part

of any arrest." *Johnson*, 137 F.Supp.2d at 892.

In *Saucier*, plaintiff was a protester at a rally where Vice President Al Gore spoke. As plaintiff walked towards the Vice President with a banner, officers removed plaintiff from the area and took him to a police van. Plaintiff claimed, *inter alia*, that an officer violently shoved him into the van. The Court stated that "[p]ushes and shoves, like other police conduct, must be judged under the Fourth Amendment standard of reasonableness." 533 U.S. at 209. Under the circumstances, the Court found that the officer's conduct was reasonable; the officer had a duty to protect the safety and security of the Vice President and reasonably felt compelled to act with a degree of urgency.

In contrast, in *Darnell v Caver*, 156 F.3d 1229 (6th Cir. 1998)(unpub. op.), plaintiff was injured during an arrest. Plaintiff was intoxicated and was alleged to have committed assault and property damage in the area. Defendant and another officer pulled plaintiff from his car when he refused defendant's order to get out of the car. Witnesses gave conflicting accounts of how plaintiff hit his head during this process. There was evidence that defendant threw plaintiff to the ground and either pushed plaintiff's head to the ground or lifted it and just let it fall to the ground. Plaintiff suffered a cut to his eye. The district court denied defendant's request for qualified immunity; it found that there was a question of fact regarding the degree of force defendant used after removing plaintiff from the car.

On appeal, the Sixth Circuit affirmed but noted that it was a close question because defendant's actions were not an egregious case of police brutality. The Court held that a finding of qualified immunity was precluded when all factual inferences were

made in plaintiff's favor, because reasonable jurors could find that defendant intentionally threw plaintiff to the ground and either pushed his head into the ground or lifted it and let it drop. Under the circumstances, the Court said that no reasonable officer would have considered the force alleged allowable.

Likewise here, Guzdziol's alleged acts were not egregious. However, giving the benefit of all factual inferences to Plaintiff, reasonable jurors could find that he used more force than was necessary under the circumstances. When Plaintiff attempted to get up, he was prone on the ground with his hands cuffed behind him. Plaintiff was unarmed and surrounded by Guzdziol and numerous other armed officers. There is no evidence that Guzdziol used an excessive amount of force in pushing Plaintiff back to the ground and putting a knee in his back. Jurors could not disagree that doing so was a reasonable means of gaining control over Plaintiff. However, reasonable jurors could find that the further act of rubbing Plaintiff's head into the carpet with enough force to create visible carpet burns, after Plaintiff was already neutralized, was excessive under the circumstances. Therefore, the Court finds that there is a genuine issue of material fact on whether Defendant Guzdziol used excessive force against Plaintiff in pushing Plaintiff's head into the carpet.

      **ii.     Margosian and VanSingel**

Plaintiff failed to demonstrate a question of fact with regard to his claims of excessive force against Margosian and VanSingel.

Margosian denies having any physical contact with Plaintiff. VanSingel admits having limited physical contact with Plaintiff, although there are some inconsistencies in his statements. A few weeks after the incident, VanSingel gave a statement during an

internal Michigan State Police interview. He said that when he first entered he yelled for Plaintiff and his roommate to get down. When Plaintiff did not comply and turned away (a claim Plaintiff denies), VanSingel said that he put the palm of his hand on Plaintiff's back and pushed Plaintiff towards the ground. He said that Plaintiff complied with the pressure and went to the ground. In February 2006, however, VanSingel testified during his deposition that his only contact with either Plaintiff or Mettler (he could not remember which) was to use just enough force with the back of his arm to move one of them so that he could go past.

Plaintiff does not identify Margosian or VanSingel as officers who allegedly kicked him. Indeed, there is no evidence to refute Margosian's claim that he did not have any physical contact with Plaintiff. And, neither version of events claimed by VanSingel constitutes excessive force. There is no evidence to refute VanSingel's claim that he did not use any more force than necessary to either guide Plaintiff to the ground in accordance with his directive, or move Plaintiff out of his way as he tried to secure the area. In either event, reasonable jurors could not disagree that VanSingel's actions were reasonable under the circumstances.

Absent evidence that Defendants actively participated in the excessive use of force, Plaintiff can only pursue an excessive force claim against them if he can prove that they: 1) supervised another officer who used excessive force or 2) owed him a duty of protection against the use of excessive force. *See Turner v Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Plaintiff fails to make either showing.

There is no evidence that Margosian or VanSingel acted in a supervisory capacity over the other officers at the scene. And, Defendants would have only owed

Plaintiff a duty of protection if they: 1) observed or had reason to know that excessive force would be or was being used, and 2) had both the opportunity and the means to prevent the harm from occurring. *Id.* However, there is no evidence that either Defendant witnessed and was in a position to intervene to prevent harm to Plaintiff by other officers.

Plaintiff implies that Margosian failed to intervene at some point when he was being abused. Plaintiff points out that Margosian said that he saw Plaintiff's face hit the floor and that he recalled several red burn marks on Plaintiff's face. However, Margosian stated that he saw Plaintiff's face hit the floor right after the door was breached and Plaintiff was ordered to get down. There is no basis to find that Margosian had time to prevent this from occurring, and there is no allegation that additional force was used against Plaintiff at that time which Margosian should or could have prevented. With regard to the burn marks on Plaintiff's face, Plaintiff alleges they were caused by Guzdziol pushing his face to the floor. However, Plaintiff says that this did not occur until fifteen minutes after the search began. Although Margosian stated that he saw the burn marks, there is no evidence that he witnessed the incident which allegedly caused it.

Defendants Margosian and VanSingel's motion for summary judgment on Plaintiff's claim of excessive force is granted.

### B. Knock and Announce

Plaintiff claims that the officers who executed the warranted did not knock and announce themselves before forcing his front door open. Margosian and VanSingel claim that officer Stachowski knocked and announced "police, search warrant" prior to

11

entering. But, Defendants claim that Plaintiff was playing music very loudly when they arrived which prevented them from hearing movement inside the apartment (and impliedly prevented Plaintiff from hearing the knock and announcement). Plaintiff denies that any music was playing at all. Officers on the scene give varying accounts of how much time elapsed after his alleged announcement, before Stachowski used the battering ram to force Plaintiff's door.[2]

"Law enforcement officers must knock and announce their presence and authority before entering a residence to execute a warrant." *United States v Pinson*, 321 F.3d 558, 565 (6th Cir. 2003). Officers must wait a reasonable period of time after knocking and announcing themselves before forcibly entering the premises. *Id*. There is no bright-line rule for what is reasonable; a court must engage in a case-by-case analysis of the facts and circumstances. *United States v Spikes*, 158 F.3d 913, 926 (6th Cir. 1998).

There are three interests served by prohibiting unannounced entries: preventing violence, preventing the destruction of property, and protecting privacy. *United States v Francis*, 646 F2d 251, 258 (6th Cir. 1981). Failure to comply with the knock and announce rule, absent exigent circumstances, constitutes a violation of the Fourth Amendment. *Id*. The Sixth Circuit recognizes three exigent circumstances which excuse an officer's unannounced forcible entry into a residence: 1) persons within already know of the officers' authority and purpose; 2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or 3) the officers have a justified

---

[2] Becker said only two to three seconds. Margosian said 12 seconds. Guzdziol said 15 to 20 seconds.

belief that those within are aware of their presence and are engaged in escape or the destruction of evidence. *Hall v Shipley*, 932 F.2d 1147, 1152 (6th Cir. 1991)(*quoting Francis*, 646 F2d at, 258).

Defendants contend that there is no question of fact regarding whether Stachowski complied with the knock and announce rule. Alternatively, they contend that exigent circumstances allowed an unannounced forcible entry.

Defendants base their first assertion on the fact that Plaintiff admits that he is fond of loud music and has a history of playing his music loudly in his car, and the fact that Plaintiff said that he and his roommate were preparing to record a song just before the officers entered the apartment. However, these facts are irrelevant, inasmuch as Plaintiff testified that no music was playing in his apartment when the officers approached and entered his apartment. The Court is not at liberty to weigh and resolve disputed questions of fact on summary judgment. *Harlow v Fitzgerald*, 457 U.S. 800, 815 (1982). Plaintiff's assertion that the officers did not knock or announce their presence before forcibly entering his apartment creates a clear question of fact regarding whether the knock and announce rule was violated.

Defendants alternate argument fails on the merits. Defendants contend that, even presuming the truth of Plaintiff's claim, exigent circumstances justified an unannounced forcible entry, because they had a reasonable belief that Plaintiff may have been engaged in the destruction of evidence.

The possibility that evidence will be destroyed can create an exigency. *Hall*, 932 F.2d at 1152. However, Defendants must establish that they had a reasonable belief that loss or destruction of evidence was imminent. *United States v Bates*, 84 F.3d 790,

13

796 (6th Cir. 1996).  "[O]fficers must have more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and announcing [an officer's] presence."  *Id* at 795; *Dickerson v McClellan,* 101 F.3d 1151, 1160 (6th Cir. 1990).  For instance, in *Hall*, the confidential informant advised the officers just before the warrant was executed that they needed to enter the premises quickly or the drugs would be gone.  932 F.2d at 1148.  Based on his familiarity with Hall, the informant advised that Hall was unlikely to voluntarily open the door until he disposed of the drugs.  932 F.2d at 1153.

      Defendants do not offer any evidence that they reasonably believed that destruction of evidence was imminent.  They only assert that Greenlee informed them before the raid that Plaintiff kept the alleged drugs in a rear room.  This fact alone does not create an exigent circumstance.  There is no evidence that Plaintiff was aware of the officer's presence before they appeared at his door.  And, unlike *Hall*, the officers were not advised by Greenlee or otherwise that Plaintiff was likely to destroy the evidence or refuse to open the door.  The officers' mere speculation is insufficient to create an exigency.  There is a question of fact as to whether there was a Fourth Amendment knock and announce violation.

      Defendants make a final argument:  that Plaintiff cannot show direct involvement by them in "any" constitutional violation.  Although stated in general terms, this assertion immediately follows Defendants' discussion of Plaintiff's excessive force claim and only specifically refers to the excessive force claim.  It is not clear whether Defendants also assert the argument with respect to the knock and announce claim.  To the extent that they do, the argument fails.

14

Defendants assert that, as a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action giving rise to a constitutional claim, will not subject an officer to direct liability. Here, Defendants claim that neither of them was assigned the duty of knocking and announcing before the forced entry. They each state that officer Stachowski was the lead officer who was designated to knock and announce before they entered. VanSingel says that he was assigned the first entry position behind Stachowski. He was the first to enter after Stachowski forced the door. His responsibility was to sweep the area to ensure that there was no danger to the officers coming in behind him. Margosian said that he was at the rear of the lineup and was one of the last to enter the apartment. Defendants' claims are unrefuted. Therefore, they presumably argue that they were not directly involved in the alleged Fourth Amendment violation.

The Sixth Circuit has held that officers who do not participate, but are merely present during the execution of search warrant, are not liable for alleged constitutional violations committed in the execution of the warrant. *See Ghandi v Police Department of City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984).

*Ghandi* does not apply in this instance. It is undisputed that both Defendants actively participated in execution of the warrant after the door was breached.

In *Aquisto v Danbert*, 165 F.3d 26 (6th Cir. 1998)(unpub. op.), the Court held that officers who do not actually breach the door, but who participate after entry, can be liable for a knock and announce violation. The Court reasoned that at least two of the interests the knock and announce rule were designed to protect--potential for violence and protecting the right of privacy--were exacerbated by defendant's participation in the

15

raid: "It cannot seriously be maintained that the potential for violence or the invasion of privacy was not made worse by having an additional officer entering the house, gun drawn, before the plaintiff was able to get out of bed." 165 F.3d at *4. Additionally, citing *Francis* and *Hall*, the Court stated that "[o]ur caselaw makes it clear that the entry itself, and not just the breaking of the door, can violate the Fourth Amendment." *Id* at *5.

The same reasoning applies here. Defendants VanSingel and Margosian were part of the entry team and they actively participated in execution of the search warrant. Therefore, summary judgment is not warranted on this ground.

### C. QUALIFIED IMMUNITY

Each Defendant asserts, in the alternative, that they are entitled to qualified immunity on each of Plaintiff's claims. Because there is a question of fact regarding whether Plaintiff's Fourth Amendment rights were violated, the Court cannot reach the question of qualified immunity on Plaintiff's claim of excessive force against Guzdziol or his knock and announce claim against Margosian and VanSingel. *See Gardenhire v Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). The question of qualified immunity is moot on Plaintiff's claims of excessive force against Margosian and VanSingel.

**V. CONCLUSION**

Defendant Guzdziol's motion for summary judgment on Plaintiff's claim of excessive force is denied. Defendants Margosian and VanSingel's motion for summary judgment on Plaintiff's claim of excessive force is granted, but their motion is denied with regard to Plaintiff's knock and announce claim.

Trial will proceed on:

1. First Amendment retaliation (with regard to request for additional charges)--Guzdziol;

2. Fourth Amendment excessive force--Guzdziol and Becker; and

3. Fourth Amendment knock and announce--Guzdziol, Becker, Margosian and VanSingel.

**IT IS SO ORDERED.**

                                            s/Victoria A. Roberts
                                            Victoria A. Roberts
                                            United States District Judge

Dated: November 3, 2006

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 3, 2006.

s/Linda Vertriest
Deputy Clerk

---